UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PAUL BEAVERS, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION G-07-00260 |
| | § | |
| METROPOLITAN LIFE INSURANCE COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION & ORDER**

**I. INTRODUCTION**

In this putative class action, the named Texas plaintiffs (collectively, "plaintiffs") are holders of pre-1982 insurance policies with Metropolitan Life Insurance Company ("defendant" or "MetLife"). They claim that MetLife breached the insurance contracts by distributing dividends lower than that to which they were entitled. Plaintiffs allege that surplus from the policies which should have been returned to them was reallocated to other lines of business, precipitating their losses. Moreover, plaintiffs only claim that they received lower dividends through April 4, 2000, more than seven years before this action was filed on May 7, 2007.

To that end, MetLife moved to dismiss the putative class action complaint for failure to state a claim upon which relief may be granted. MetLife claims that Texas's four-year statute of limitations for a breach of contract claim bars plaintiffs' claim for relief and that no grounds for tolling are applicable. After considering the complaint, the arguments of counsel, and the applicable law, the defendant's motion to dismiss will be GRANTED. Moreover, because the court is granting the motion to dismiss, it need not address defendant's pending motion for a transfer of venue. Accordingly, defendant's pending motion to transfer venue will be DENIED AS MOOT.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Before examining the limitations issues, the court will briefly recount the facts of the case in the light most favorable to the plaintiffs, as the court must on defendant's motion to dismiss. *See McKinney v. Irving Independent Sch. Dist.*, 309 F.3d 308, 310 (5th Cir. 2002) (citing *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 928 (5th Cir. 2002)). This suit was brought as a putative class action by plaintiffs on behalf of themselves and all persons who, before January 1, 1982, purchased one or more participating MetLife individual life or other participating policy in force any time during the period January 1, 1985 through April 4, 2000.[1] During this time period, MetLife was organized into four income-producing departments which, as of the early 1990s, consisted of Personal Insurance, Pensions, Group Insurance, and Employer Financial Services.[2]

The Personal Insurance line of business at issue included participating life insurance policyholders who were entitled to receive dividends from the surplus accruing on their policies. Personal Insurance managed individual insurance policies which were divided into two blocks of business: pre-1982 policies, and 1982 and later policies. The putative class members are those insureds holding pre-1982 policies.[3]

Plaintiffs contend that, beginning in 1983, MetLife and a partner acquired the First Interstate Bank building ("First Interstate") in Houston, Texas. In 1985, MetLife bought out its partner and became the sole owner of First Interstate. MetLife allocated income from its equity interest to the Personal Insurance line of business and the income from its mortgage interest primarily to other lines

---

[1] Dkt. 1, Class Action Compl. ¶ 15.

[2] *Id.* ¶ 23.

[3] *Id.* ¶ 24.

2

of business. According to the plaintiffs, this allocation, as well as 80 similar transactions, had the purpose and result of transferring surplus profits from Personal Insurance to other business areas.[4]

Plaintiffs assert that these improper allocations breached the insurance contracts and caused damages in the form of dividends paid to the plaintiffs throughout the 1990s lower than that to which they were entitled. Specifically, from 1991 to 1998, MetLife repeatedly reduced dividends to participating policyholders. In internal documents, MetLife allegedly conceded that investment earnings were inadequate because the earnings allocated to Personal Insurance were reduced by imposing on pre-1982 policyholders high-interest borrowing from other lines of business. MetLife also allegedly admitted that the lower earnings were the result of the real estate income allocations from the 1980s.[5] Notably, all of MetLife's conduct which the plaintiffs allege constituted a breach of contract occurred during the 1980s alone. Thus, for limitations purposes, plaintiffs' claim accrued no later than December 31, 1989, unless the plaintiffs can demonstrate the existence of a tolling exception to defer accrual of their claim.

This action was filed more than seventeen years later, on May 7, 2007, and the defendant has moved to dismiss on the basis of limitations.

### III. STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720,

---

[4] *Id.* ¶¶ 29–34.

[5] *Id.* ¶ 43.

725 (5th Cir.2002). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). "[M]ore than labels and conclusions" are required, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65.

In the class action context, if the defendant demonstrates that the named plaintiffs' cause of action should be dismissed for failure to state a claim, the entire putative class action complaint should be dismissed. *See Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.), *modified on reh'g on other grounds*, 625 F.2d 1226 (5th Cir. 1980). Further, the affirmative defense of limitations may justify dismissal under Rule 12(b)(6) if it is evident from the pleadings that the action is barred and the plaintiffs cannot demonstrate grounds for tolling or some other basis to avoid the bar. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); *see Kansa Reinsurance v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("[A] claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").

### IV. ANALYSIS

The complaint and the plaintiffs' response to the defendant's motion confirm that the allegedly improper allocations underlying plaintiffs' breach of contract claim all occurred during the 1980s. In Texas, breach of contract actions are subject to a four-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 2002), and limitations generally begins to run from the time of the breach. *See Enterprise-Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822, 837 (Tex. App.—San Antonio), *writ denied per curiam*, 843 S.W.2d 476 (Tex. 1992). Therefore, since this action was filed in 2007, the complaint must be dismissed unless plaintiffs can avail themselves of

4

an applicable tolling exception to avoid the limitations bar. *See Jones*, 339 F.3d at 366. Plaintiffs assert two possible exceptions: (1) the discovery rule; and (2) *American Pipe* tolling.[6] The court will consider each of these possible exceptions in turn.

### A. THE DISCOVERY RULE

Generally speaking, a cause of action accrues when a wrongful act causes some legal injury. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). However, accrual may be deferred under the discovery rule when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). The Texas Legislature has adopted the discovery rule in some cases. *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 17.565 (Vernon 2002) (deceptive trade practices); TEX. CIV. PRAC. & REM. CODE ANN. § 16.010(a) (Vernon 2002) (misappropriation of trade secrets). When the legislature is silent on the applicability of the discovery rule to a certain type of claim, that issue is appropriately left to the courts. *See Via Net*, 211 S.W.3d at 313. But to avoid defeating the purpose behind the limitations statutes, Texas courts have restricted the discovery rule to exceptional cases. *See id.*; *S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996) (explaining that applications of the discovery rule "should be few and narrowly drawn").

---

[6] The latter exception derives its name and origin from the case of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756 (1974), in which the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *See id.* at 554.

5

**1. Inherently Undiscoverable**

The Texas Supreme Court has cogently summarized the requisite showing for the first element of the discovery rule:

> To be "inherently undiscoverable", an injury need not be absolutely impossible to discover, else suit would never be filed and the question whether to apply the discovery rule would never arise. Nor does "inherently undiscoverable" mean merely that a particular plaintiff did not discover his injury within the prescribed period of limitations; discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.[7]

*S.V.*, 933 S.W.2d at 7. This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable. *Via Net*, 211 S.W.3d at 313–14 (citing *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 122 (Tex.2001)).

The plaintiffs argue that "it was impossible for policyholders to learn of MetLife's internal reallocations of surplus and earnings." Dkt. 17 at 8. MetLife responds that plaintiffs could have discovered the allegedly unlawful conduct through the exercise of due diligence, and indeed one

---

[7] The courts have excused the due diligence requirement and applied the discovery rule when the parties share a fiduciary relationship. *See Andretta v. West*, 415 S.W.2d 638, 642 (Tex. 1967) (holding in the oil and gas law context that an executive rightholder owes a fiduciary duty to nonparticipating royalty owners, and thus limitations on the latter's claim for wrongful amendment of a lease would be tolled because they have no reason to know of such wrongful conduct); *see also Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (applying the discovery rule to a legal malpractice claim because of the special *fiduciary* relationship shared between attorney and client). In this case, the plaintiffs have argued that insurer and insured share a "special relationship." *See* Dkt. 17 at 7. However, they have not made any showing that MetLife owed any fiduciary duty to plaintiffs, and this court will not presume one. Accordingly, the court cannot excuse any due diligence requirement for an application of the discovery rule to the breach of contract claim in this case.

plaintiff in a similar class action against MetLife in New York, Joyce Rabouin, did so as late as 1998. The court agrees with the defendant.

As a federal court sitting in diversity, the court first notes that in Texas "[i]t is well-settled law that a breach of contract claim accrues when the contract is breached." *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). Indeed, the Texas Supreme Court has recently reaffirmed this basic tenet and rejected the discovery rule three times for ordinary contract disputes. *See Via Net*, 211 S.W.3d at 314–15; *Wagner & Brown Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1999). Still, the Texas Supreme Court did acknowledge that some contract claims may present a need for the discovery rule, but "those cases should be rare, as diligent contracting parties should discover any breach during the relatively long four-year limitations period provided for such claims." *Via Net*, 211 S.W.3d at 314–15.

This language provides a narrow opening in the tolling door for contract claims; however, the alleged breaches present in this case simply do not cross the threshold. Due diligence requires that each contracting party protect its own interests. *Barfield v. Howard Smith Co. of Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968). This diligence requirement may include requesting information from the contracting partner regarding performance of the contractual obligations. In fact, failing to ask for such information is not due diligence. *See Wagner & Brown*, 58 S.W.3d at 736.

In *Wagner & Brown*, the defendant leased and operated the mineral estates in the Conger Field in which the plaintiffs Lonnie Harwood and David Lawrence owned royalty interests. *Id.* at 733. The leases provided that the plaintiffs were entitled to a one-eighth royalty on the amount realized from the sale of gas at the wells. *Id.* After the lessor entered into a gas purchase agreement with a third party, its general partner contracted with the gas purchasers to gather and compress the

7

gas and deliver it to a central facility. *Id.* The lessor deducted the gathering and compression charges from the amount realized on the sale of gas, thus reducing the royalty payments made to the plaintiffs in the early 1980s. *Id.* at 733–34. Despite this questionable reduction in payments, the plaintiffs did not bring suit against the lessor until 1996, arguing that the discovery rule was applicable because the lessor maintained all of the information and records related to the reduction of royalties. *Id.* at 734–36. The Texas Supreme Court disagreed, holding that "a royalty owner should exercise due diligence to determine whether charges made against royalty payments are proper and reasonable." *Id.* at 736. Thus, the court found that the lessees' injuries were not inherently undiscoverable, and the breach of contract action accrued at the time of the breach rather than the delayed discovery thereof. *Id.* at 737.

The case at bar is materially indistinguishable from *Wagner & Brown*. Just like the lessees who did not diligently investigate the lessor's conduct or the reasons for the lower royalty payments, the plaintiffs in this case have not shown this court that they made appropriate efforts, or, indeed, any efforts to inquire with MetLife about any allocations of surplus profits throughout the 1980s to determine whether defendant was properly performing its contractual obligations. In rebuttal, plaintiffs contend that it would have been impossible to discover defendant's actions during this time period, but this is not so. Dkt. 17 at 8. The simple fact that plaintiffs did not themselves discover MetLife's alleged conduct is not probative of whether the type of injury was inherently undiscoverable by an affected party. *Via Net*, 211 S.W.3d at 314–15. Indeed, Joyce Rabouin, the named plaintiff in a similar class action in New York state court, did discover the allegedly unlawful conduct and brought suit against MetLife in 1998. Thus, the injuries in this case were not inherently undiscoverable, and the discovery rule exception is inapplicable to defer accrual of plaintiffs' claim.

8

### 2. Objectively Verifiable

Because of the court's conclusion that plaintiffs' type of injury is not inherently undiscoverable, it need not determine whether plaintiffs' evidence of injuries are objectively verifiable. *See Wagner & Brown*, 58 S.W.3d at 737. Nonetheless, for the sake of completeness, the court will consider this element as well.

For evidence of an injury to be objectively verifiable, "the presence of the injury and the producing wrongful act cannot be disputed." *See Howard v. Fiesta Tex. Show Park, Inc.*, 980 S.W.2d 716, 720 (Tex. App.—San Antonio 1998, pet. denied). The Texas Supreme Court has held that this element of the discovery rule requires that "the evidence must rise to a higher level of certainty" than the preponderance of the evidence standard for liability. *S.V.*, 933 S.W.2d at 19. Here, after carefully reviewing plaintiffs' proffer of evidence, the court finds that their submission does not meet the high bar of "objectively verifiable" evidence of injury.

The exhibits plaintiffs attached to their response do indeed show that MetLife transferred earnings between lines of business during the challenged period in the 1980s. However, as in the *Rabouin* litigation, there will undoubtedly be a "battle of the experts" on the issue of whether these allocations actually damaged the plaintiffs in the form of reduced dividend payments. *Cf. Rabouin v. Metro. Life Ins. Co.*, No. 111355/98, 2005 WL 3536441, at *8 (N.Y. Sup. Ct. Nov. 23, 2005) ("[W]hile MetLife's expert opines that [plaintiffs] were not damaged, their actuarial expert opines that the transfer of earnings distorted plaintiffs' contribution to surplus reducing the dividends refunded to them."). While this contradictory testimony may create a triable issue of fact, it cannot meet the "higher level of certainty" required of documentary evidence in this situation to conclusively establish the "presence of the injury." *See S.V.*, 933 S.W.2d at 19; *Howard*, 980

S.W.2d at 720. Thus, plaintiffs have not adduced indisputable, "objectively verifiable" evidence of the wrongful act *and* resultant injury to satisfy this element.

### 3. Conclusion

Because plaintiffs have not shown that their injuries were either inherently undiscoverable or that the documentary proof made the injuries objectively verifiable, the discovery rule does not toll the accrual of plaintiffs' claim against MetLife for the allegedly improper allocations of profits.[8]

### B. *AMERICAN PIPE* TOLLING

Plaintiffs alternatively assert that their claim is saved by *American Pipe* tolling. One Texas appellate court has summarized the *American Pipe* doctrine as follows:

> [E]ven though the statute of limitations on a class member's individual cause of action would expire during the pendency of a class action, the filing of the class action suspends the applicable statute of limitations as [to] all purported members of the class. Thus, the right to pursue an *individual* cause of action is not foreclosed by decertification of the class. Any time remaining on the statute of limitations of the unnamed property owners' *individual* cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was decertified.

*Grant v. Austin Bridge Constr. Co.*, 725 S.W.2d 366, 370 (Tex. App.—Houston [14th Dist.] 1987, no writ) (emphases added). Plaintiffs claim that during the pendency of the *Rabouin* class action filed in 1998, the limitations period on their claim was tolled, and after decertification in January 2006, the clock restarted anew. According to plaintiffs, because they filed this action within four years of decertification, their breach of contract claim is still viable. MetLife vehemently disagrees,

---

[8] Alternatively, even if the court held that the discovery rule was applicable to this type of injury, the court would still find that this claim is time-barred. At the latest, reasonably diligent plaintiffs should have inquired the reasons for the lower dividend payments beginning in 1991. As this later date is far more than four years before commencement of this suit, plaintiffs' cause of action would have long since expired in any case.

arguing that any tolling could only begin on June 22, 1998 (when Joyce Rabouin filed her complaint), and tolling was unavailable at this late date because by then limitations had already run. Further, even if the plaintiffs could avail themselves of the benefit of *American Pipe*, MetLife posits that they cannot do so through the vehicle of a successive class action. The court agrees with MetLife on both grounds.

Under Texas law, the *American Pipe* rule does not restart the limitations period after decertification of a class action; it merely suspends the running of any time left during the pendency of a certified class. *See Grant*, 725 S.W.2d at 370. Here, plaintiffs' claim accrued no later than 1989, and thus limitations must have run by the end of 1993. Because the *Rabouin* case was not instituted until 1998, *American Pipe* is inapplicable to suspend a limitations period that had already expired.

In the alternative, even if the limitations period on plaintiffs' claim could be stayed during the pendency of the *Rabouin* class certification, *American Pipe* does not toll limitations on a claim for reassertion in a subsequent *class* action. *See Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any."); *see also Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely. Permitting such tactics would allow lawyers to file successive putative class actions with the hope of attracting more potential plaintiffs and perpetually tolling the statute of limitations as to all such potential litigants, regardless of how many times a court declines to certify the class. This simply cannot be what the *American Pipe* rule was intended to allow, and

we decline to embrace such an extension of that rule."). Rather, the Texas courts applying the *American Pipe* doctrine have only suspended the limitations period for a subsequent *individual* action. *See Grant*, 725 S.W.2d at 370 ("Any time remaining on the statute of limitations of the unnamed property owners' *individual* cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was decertified." (emphasis added)). Therefore, in any case, *American Pipe* tolling is inapplicable to plaintiffs' instant claim asserted through the vehicle of a subsequent class action complaint.

## V. Conclusion

For the foregoing reasons, neither the discovery rule nor the *American Pipe* doctrine can defer the accrual of plaintiffs' breach of contract claim beyond some time in the 1980s, when MetLife engaged in the challenged transactions. Plaintiffs' claim was only viable for four subsequent years under the applicable Texas statute of limitations, and the claim expired at the very latest on December 31, 1993. The filing of the putative class action complaint on May 7, 2007 was therefore untimely. Defendant's motion to dismiss (Dkt. 10–11) is GRANTED, and the plaintiffs' putative class action complaint (Dkt. 1) is DISMISSED WITH PREJUDICE. MetLife's pending motion to transfer this action to the United States District Court for the Southern District of New York (Dkt. 15–16) is DENIED AS MOOT.

Signed at Houston, Texas on November 8, 2007.

_____
Gray H. Miller
United States District Judge